TOWN OF AROMA *v.* AUDITOR OF STATE and others.

(*Circuit Court, N. D. Illinois.* March 2, 1883.)

1. MUNICIPAL BONDS—VALIDITY OF EXECUTION—RULE OF CONSTRUCTION.

That full value has been paid for municipal bonds will not remedy failure to conform their execution to the terms of the act under which they were issued; but any doubt as to the construction of the statute should, under certain circumstances, be resolved in favor of *bona fide* holders.

2. SAME—PROPER SIGNING.

Examination of the use of the terms "town" and "township," in sections 16 and 17 of the act of April 19, 1869, (Illinois,) and in the statute relating to township organization, makes it reasonable to construe certain bonds which had been issued by a town organized under the township system, and which had been signed by the town clerk, and not by the county clerk also, but by the supervisor of the town, as properly subscribed.

3. SAME—CERTAIN ISSUE HELD GOOD IN LAW.

Bonds authorized before the constitution of 1870 (Illinois) took effect, and issued thereafter by a majority of the voters in such a town, at an election called by the clerk of the town and not of the county, reciting compliance with all other requirements of law as to such special elections, and so signed, on which interest had been paid for several years by the town and county, their object having been in fact accomplished, *held* valid under the act of 1869, and within the reservation of the constitutional prohibition.

In Equity.

*Robert Doyle,* for plaintiff.

*Thomas Mather,* for defendants.

DRUMMOND, J. This is a bill filed by the town to declare certain bonds which were issued in favor of the Kankakee & Indiana Railroad Company, in 1870, void, on the ground that the election authorized to be held under the act of April 19, 1869, was not called by the

proper authorities, in this: that it was called by the clerk of the town instead of the clerk of the county, and because the bonds were signed by the supervisor of the town instead of by the supervisor of the county. Another objection was made that the bonds were issued after the constitution of 1870 took effect. This last objection cannot be maintained if the bonds in other respects are valid, because the law under which the subscription was made, was passed and the vote taken before the constitution took effect; and the right was reserved to the town in the constitution to execute bonds which had been previously authorized under existing laws by a vote of any municipal corporation. The principal objection seems to be that the bonds were signed by the supervisor of the town instead of the county clerk, as it is claimed they should have been. The town clerk called the election, and it is not controverted but that at an election of the town of Aroma a majority of all the legal voters of the town voting at the election were in favor of the subscription.

Section 16 of the act of 1869 declared that any incorporated town, or any township, under the township organization system, along the route of said road, might subscribe to the capital stock of the company. Section 17 declares: "If it shall appear that a majority of all the legal voters of such town, township, or village voting at such election have voted for subscription, it shall be the duty of the supervisor of such town, or the chief executive officer of such incorporated town, and the county clerk, for and in behalf of such township or village, to subscribe to the capital stock of said railroad company." The section further provides that he shall execute to the railroad company bonds which shall be signed "by such chief executive officer, supervisor, or county clerk, and attested by the town clerk, where there is one."

There does not appear in these sections to be observed throughout the distinction which is claimed to exist between an incorporated town—that is to say, one incorporated independent of the law as to township organization—and a town incorporated under that law; because it will be observed, from the language already quoted from section 17, that it speaks of the supervisor of the town, and the chief executive officer of an incorporated town, and of the county clerk for and in behalf of the township. The corporate name of a town, under the law of township organization, is the name of the town as a town and not as a township, (chapter 139, § 38, Rev. St.,) and the only legal distinction between the two is where a town is incorporated under a general law or by special statute, or where one is incor-

porated under the statute relating to township organization. In each instance they are called towns. The bonds in this case, issued by the town of Aroma, were signed by the town clerk and by the supervisor of the town, and recited that they were issued by virtue of the law of April 19, 1869, and that a special election was held in the town on April 23, 1870, at which election a majority of the legal voters participating at the same voted for the subscription, and that the special election was, by the proper authority, then and there duly declared carried for subscription; and that all the other requirements of the law in relation to such special election were duly complied with.

It is admitted that the defendants are *bona fide* holders for value of certain bonds, issued as stated; and it is further admitted that, under special laws of the state applicable to such case, taxes were levied for several years upon the property of the town to pay the interest on the bonds—one year's interest having been paid by the county authorities and the other year's by the state authorities. And the question in the case is whether the bonds in the hands of the defendants, under the facts stated, are valid as against the town, and whether it is competent for the town to have them declared void on account of the objections made.

It is insisted that the county clerk should have subscribed the bonds, instead of the supervisor of the town of Aroma, because section 17 declares that the county clerk, for and in behalf of such township or village, is to subscribe for the capital stock, and he shall execute the bonds to the railroad company; but then the language which precedes that is, that shall be the duty of the supervisor of such town, or the chief executive officer of such incorporated town. Now, the corporation that was created under the law was not the township of Aroma, but it was the town of Aroma, and the language of the statute in respect to the supervisor of such town was quite as applicable to the supervisor of Aroma, as when it speaks of the county clerk, for and in behalf of such township; and it will be seen that in the same clause the supervisor of the town and the chief executive officer of the incorporated town are both named; and therefore the supervisor of the town can have no meaning unless it is applicable to a town created under the statute relating to township organization.

There is another view which may be taken of the principal question involved in this case, and that is whether the word "town," in the statute, means a township at all; and, *vice versa,* whether a township does not necessarily mean a territory according to the govern-

ment survey. The statute relating to township organization (chapter 139, § 6, Rev. St.) declares: "After a majority of the legal voters of a county have decided in favor of township organization, that the commissioners appointed shall proceed to divide such counties into *towns*, making them conform to the *townships* according to the government surveys; and it would seem not to be an unreasonable inference, from the language of the sixteenth and seventeenth sections of the statute already referred to, that the law intended to authorize townships, which had not been formed into towns under the statute, to subscribe for the capital stock of the railroad company. The sixteenth section speaks of an incorporated town and a township as being authorized to subscribe for the capital stock of the company. The seventeenth section speaks of towns, townships, and villages, and it seems to me there is great force in the position, even admitting that it is somewhat difficult to reconcile the various parts of the two sections, that the word "town" refers to a town created out of a township—a corporation under the statute; and, if that be so, then there can be no objection either to the signatures of the bonds or to the subscription to the stock of the railroad company or to the giving of notices of election.

It must be borne in mind that the parties sought to be prevented from enforcing their claims upon the bonds in this case have purchased and hold them in good faith for value, by virtue of the law under which they were issued, and the facts recited in the bonds. The plaintiff seeks to avoid liability upon the bonds on the ground that they are not enforceable in law and under the facts of the case. Undoubtedly, if it were clear that the bonds had been issued without authority of law, the fact that the holders had paid value for them would not avail, but in cases where there may be said to be a doubt as to the true construction of a statute, and, if that is so in this case, then, under the circumstances which have been detailed in evidence, and about which there is no controversy, the doubt ought to be resolved in favor of the *bona fide* holder of the bonds; and if the statute is susceptible of two constructions, then, under the circumstances, that construction should be given which should carry out in good faith the contract between the parties. Now, the town has acted throughout on the assumption that the clerk of the town was the proper person to give the notice, and that the supervisor was the proper person to subscribe to the capital stock of the railroad company and to execute to the company the bonds contemplated by the law, and that the clerk of the town was the proper person to attest the bonds.

This view of the case is very much strengthened by the fact that the property has been assessed for a series of years for the payment of interest due on the bonds; that the money has been collected, so far as we know, during those years without any legal objection being interposed to the collection until the filing of this bill. Add to this that there is no controversy but that a majority of the voters of the town voting at the election called was in favor of the subscription to the railroad stock and to the issue of the bonds; and when to this is also added the recital in the bonds, and that all the other requirements of law in relation to the special election were duly complied with,—it would seem as though it were not competent for the town now to rely upon the defense which is interposed in this case. Unlike some of the cases which have come before the court, in this case they have obtained the object which they sought: the road has been finished and is in operation, and the citizens of the town consequently have had the full benefit to their property of a completed railway.

The bill must, therefore, be dismissed.

See *Town of Pana* v. *Bowler*, 2 Sup. Ct. Rep. 704.